[S.F. No. 24018. Oct. 16, 1979.]

BENDIX FOREST PRODUCTS CORPORATION, Petitioner, v.
DIVISION OF OCCUPATIONAL·SAFETY AND HEALTH,
Respondent.

**COUNSEL**

Nancy Mahoney Cohen for Petitioner.

Robert D. Peterson as Amicus Curiae on behalf of Petitioner.

John W. Hawkes and Peter Weiner for Respondent.

**OPINION**

MANUEL, J.—Bendix Forest Products Corporation (hereafter Bendix) sought a writ of mandamus in the Court of Appeal to review a decision of respondent Division of Occupational Safety and Health, Department of Industrial Relations (hereafter Division), ordering Bendix to provide certain protective clothing to its employees at company expense.[1] The Court of Appeal issued an alternative writ and thereafter held the directive invalid. We granted a hearing to resolve the issue whether the Division has authority to issue its directive. We hereafter conclude that the Division has the authority to take the action it did and therefore discharge the alternative writ and deny the petition for writ of mandamus.

Bendix is engaged in lumber production at several locations, including Martell in Amador County. The Division is the agency charged with enforcing and administering "all laws and lawful standards and orders, or special orders" requiring a safe working environment and protection of employee health. (Lab. Code, § 6307.)[2]

---

[1]Until October 1, 1978, Bendix was known as American Forest Products Association. The Division's name was changed from Division of Industrial Safety on July 1, 1978, pursuant to the Governor's Reorganization Plan No. 1.

[2]Section 6307 provides: "The division has the power, jurisdiction, and supervision over every employment and place of employment in this state, which is necessary to

On June 27, 1978, a special order was issued by the safety engineer and district manager in the Modesto district office of the Division requiring Bendix, at its expense, to provide gloves or mittens to be worn by employees while removing lumber from the drag chain of the dry kiln area at its Martell facility. At Bendix's request, a hearing on the special order was held before John Hawkes, administrative chief of the Division.[3] In a decision rendered on September 25, 1978, Hawkes held that although the directive in question does not fit under the description of "special order" set out in section 6305, it was nevertheless valid because the Division "has broad authority to issue Orders for certain purposes," and a safety provision in the Administrative Code stating that "Hand protection may be required for employees . . ." (Cal. Admin. Code, tit. 8, § 3384)[4] gave the Division discretionary authority to order the use of gloves under certain circumstances and to require that the employer provide them.

adequately enforce and administer all laws and lawful standards and orders, or special orders requiring such employment and place of employment to be safe, and requiring the protection of the life, safety, and health of every employee in such employment or place of employment."

The section is contained in Division 5 of the Labor Code which codifies the California Occupational Safety and Health Act of 1973 (Cal/OSHA). Division 1 of the code defines the general powers and duties of the Department of Industrial Relations which includes the three entities directly administering Cal/OSHA: The Occupational Safety and Health Standards Board (successor to the Industrial Safety Board; hereafter Standards Board), responsible for adopting standards (§§ 140, 142.3); the Occupational Safety and Health Appeals Board, responsible for appeals from citations and proposed penalty assessments imposed by respondent Division (§§ 148, 6600); and respondent Division, the enforcement arm of the department. The Division's enforcement power is primarily set forth in section 6307, *supra,* and section 6317 which provides for citations and imposition of civil penalties. Specific reference to the Division as the sole enforcer of the standards set by the Standards Board is also contained in section 142, in the chapter which sets up the Standards Board. (For commentaries and a historical analysis of Cal/OSHA, see Hunter, *California Occupational Safety and Health Act: An Overview* (1975) 50 L.A. Bar Bull. 303; *The California Occupational Safety and Health Act of 1973* (1976) 9 Loyola L.A. L.Rev. 905.)

[3]Section 6308 provides in pertinent part: ". . . An employer may request a hearing on a special order or action ordered pursuant to this section, at which the employer, owner or any other person may appear and show cause why he should not comply with such order or action. The division shall conduct such hearing at the earliest possible time."

[4]The safety provision, which provides in its entirety that "Hand protection may be required for employees whose work regularly exposes their hands to hazardous substances, cuts or burns," was adopted by the Standards Board as part of its general industry safety orders pursuant to its legislative mandate in 1973 to "adopt the standards at least as effective as the federal standards" (§ 142.3, subd. (a)). Prior thereto, the safety provision, identically worded, had been contained in section 3290 (Cal. Admin. Code, tit. 8), as part of the general industry safety orders promulgated by the predecessor Industrial Safety Board.

■ Section 6308 provides that "All orders, rules, regulations, findings, and decisions of the division made or entered under this part may be reviewed by the Supreme Court and the courts of appeal as may be provided by law." Absent a clear indication that a writ of review is intended,[5] we conclude that the Legislature contemplated review by mandamus or any other writ which may be appropriate. (See *Carmona* v. *Division of Industrial Safety, supra,* 13 Cal.3d 303, 308, fn. 4; *Standard Oil Co.* v. *State Board of Equal.* (1936) 6 Cal.2d 557 [59 P.2d 119]; 5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, § 210, p. 3965; § 115, pp. 3890-3893; see also *Tex-Cal Land Management, Inc.* v. *Agricultural Labor Relations Bd.* (1979) 24 Cal.3d 335, 350 [156 Cal.Rptr. 1, 595 P.2d 579].)

Petitioner Bendix first contends that the Division acted without and in excess of its jurisdiction in issuing the special order. The order, purportedly issued "in accordance with California Labor Code sections 6305 and 6308 for unsafe condition(s)" that were found during an inspection or investigation, stated that it was based on section 6403, subdivision (a), and described no "unsafe condition" but nevertheless ordered that: "No employer shall fail or neglect to provide and use safety devices and safeguards reasonably adequate to render the employment and place of employment safe; the employer shall provide at its expense, gloves or mittens to be worn by employees while removing lumber from the drag chain of the dry kiln area."

Section 6305, subdivision (b), defines "special order" as "any order written by the chief or his authorized representative to correct an unsafe condition, device, or place of employment which poses a threat to the health or safety of an employee and which cannot be made safe under existing standards or orders of the standards board."

There is no factual dispute in this case. All parties agree that the wearing of gloves or mittens is a necessary safety practice at the Martell facility. The compliance safety engineer who inspected the facility

[5]Prior to the enactment of Cal/OSHA in 1973, the agency's decisions were reviewable by writ of review in the Courts of Appeal and this court. Former section 6600 provided for review "in the manner specified in this chapter"; section 6601 provided for review only by the methods set out in the workmen's compensation law. (*Loustalot* v. *Superior Court* (1947) 30 Cal.2d 905 [186 P.2d 673].) With the enactment of Cal/OSHA and repeal of sections 6600 and 6601, a writ of review is no longer the required procedure. (*Carmona* v. *Division of Industrial Safety* (1975) 13 Cal.3d 303, at p. 308, fn. 4 [118 Cal.Rptr. 473, 530 P.2d 161].)

indicated at the hearing that all employees who were handling lumber were wearing mittens and that there was nothing wrong with the mittens: "They were adequate." There was evidence that the employees are required to wear gloves or mittens, subject to immediate suspension for failing to do so and, on the second day, to discharge. The mittens most commonly used are of heavy leather, made for pulling lumber or other heavy labor. Bendix provides gloves or mittens at the Martell facility on a cash or payroll deduction basis but has no objection to employees obtaining them elsewhere.

■ Since no evidence was presented to warrant the conclusion that a condition existed which posed a threat to the safety or health of the employees and which was not correctable under existing standards or orders of the Standards Board, hearing officer Hawkes properly found that the order issued by the Division does not come within the terms of the statute providing for special orders. ■ The responsibility of the Division to provide for the health and safety of workers is not limited, however, by the statutory provision in section 6305 for issuance of special orders to correct unsafe conditions. As noted earlier, the Division's duties and powers at the present time extend to administering and enforcing "all laws and lawful standards and orders or special orders." (§ 6307.)

Specific enforcement authority is set out in section 6308.[6] ■ The Division's broad authority under this section and other statutory provisions (§ 6306, subds. (a) and (b)) "make clear that the terms of the legislation are to be given a liberal interpretation for the purpose of achieving a safe working environment." (*Carmona* v. *Division of Industrial Safety, supra,* 13 Cal.3d 303, 313.)

We look first to the general laws enacted to insure the health and safety of employees. The primary responsibility for safety has been placed on

---

[6]In pertinent part, section 6308 provides: "The division, in enforcing occupational safety and health standards and orders and special orders may do any of the following: (a) Declare and prescribe what safety devices, safeguards, or other means or methods of protection are well adapted to render the employees of every employment and place of employment safe as required by law or lawful order. [¶] (b) Enforce Section 25910 of the Health and Safety Code and standards and orders adopted by the standards board pursuant to Chapter 6 (commencing with Section 140) of Division 1 of the Labor Code, for the installation, use, maintenance, and operation of reasonable uniform safety devices, safeguards, and other means or methods of protection, which are necessary to carry out all laws and lawful standards or special orders relative to the protection of the life and safety of employees in employments and places of employment. [¶] (c) Require the performance of any other act which the protection of the life and safety of the employees in employments and places of employment reasonably demands."

the employer. "Every employer shall furnish employment and a place of employment which are safe and healthful for the employees therein." (§ 6400.) The employer is required to "furnish and use safety devices and safeguards, and shall adopt and use practices . . . which are reasonably adequate to render such employment and place of employment health-ful. . . ." (§ 6401.)

Section 6403, which formed the basis for the Division's action, states: "No employer shall fail or neglect: (a) To provide and use safety devices and safeguards reasonably adequate to render the employment and place of employment safe." Although no general law refers to hand protection, the Standards Board, pursuant to authority set forth in section 142.3, has adopted a regulation or standard which provides that hand protection may be required. (§ 3384, Cal. Admin. Code, tit. 8, *supra,* fn. 4.) It was pursuant to these laws and standards that the Division directed Bendix to provide protective hand covering at company expense.

Bendix contends that the decision of the Division, relying on section 6308 as authority for the directive, paints the Division's authority with too broad a brush. Bendix argues that section 6308 gives the Division no authority to act unless the safety or health of employees is endangered, that the safety of employees is taken care of by providing the gloves and mittens on a cash or payroll deduction basis, and that nothing in the general law or the standards of the Board requires that employers pay for safety devices. In sum, Bendix characterizes the Division's action as an attempt to legislate a new standard, encroaching on the authority of the Standards Board which is the only agency which has been delegated powers to "adopt standards." (§ 142.3, subd. (a).) We disagree. The decision of the Division was not a quasi-legislative judgment promulgating a new regulation or standard but rather a specific application of laws and existing regulations. We see no conflict in this exercise of power of the Division vis-à-vis the Standards Board.

Nor do we find error in the Division's interpretation of section 6403 and the accompanying regulation, section 3384. At issue was the meaning of the word "provide" in section 6403, as well as the word "furnish" in section 6401.

Bendix points to traditional practice and customs in the industry for employees to pay for protective devices. The custom and practice of an industry or profession is not controlling in determining the intent of

the Legislature or legislative body. (*Crees* v. *California State Board of Medical Examiners* (1963) 213 Cal.App.2d 195 [28 Cal.Rptr. 621].) "[W]e know of no rule which says that the conduct of those whose activities are regulated by the statute can aid in its construction." (*Jacobsen* v. *Bd. of Chiropractic Examiners* (1959) 169 Cal.App.2d 389, 395 [337 P.2d 233].)

In 1968, prior to the enactment of Cal/OSHA, the Attorney General was asked for an opinion on the subject of safety equipment, specifically whether the statute (§ 6401) and the regulation thereunder (General Safety Order No. 3290) required the employer to pay for necessary and required personal protective clothing and equipment. General Safety Order No. 3290 is now section 3384, here in question. After review of the historical development of the statute and regulation, the Attorney General concluded: "In short, the originally ambiguous word 'furnish' in section 6401 has been interpreted by the Division of Industrial Safety to mean that the employer must *at his expense* supply personal protective equipment, unless he and his employees—singly or collectively—agree otherwise. This construction, which has long stood unchallenged, is reasonable and within the agency's authority. Cf. *Kerr's Catering Service* v. *Department of Industrial Relations,* 57 Cal.2d 319, 324-325, *cert. denied* 371 U.S. 818 (1962)." (51 Ops. Cal.Atty.Gen. 105, 109.)[7] (Italics in original.)

The question of an employer's duty to pay for safety equipment was also presented in *Oakland Police Officers Association* v. *City of Oakland* (1973) 30 Cal.App.3d 96 [106 Cal.Rptr. 134]. The trial court held that the city's obligation to furnish police officers with revolvers was limited to the amount provided by the Legislature. In reversing, the Court of Appeal relied principally on the consideration which concerns us here, namely the primacy of the employer's responsibility for the safety of employees. The court held that the fund established by the Legislature for acquiring the revolvers neither affected nor removed from the city its fundamental obligation under section 6401 to purchase for and provide each officer

---

[7]We express no opinion whether, as implied in the opinion of the Attorney General, the payment of required safety equipment and clothing can be a proper subject of collective bargaining. Bendix contends that when the employer and the union have agreed, as part of the whole compensation package, the employee shall bear the expense of the protective clothing, the bargaining should not be upset by decision of a state agency. The Division, on the other hand, urges that the legislative intent to place fiscal responsibility for safety of employees on the industry, which can then pass the costs to consumers, compels the conclusion that the matter here at issue cannot be a subject for collective decision making. We do not reach the question, for the record contains no evidence of an agreement in the contract between Bendix and the union.

with a revolver as a safety device. There, as here, the employer argued that since the officers were then providing their own revolvers, section 6401 was not applicable. The court stated: "If we imagine a case in which an officer were directed to go about his duties unarmed, and he were killed by a felon, can there by any doubt that it would be held that the Labor Code had been violated? Of course, the prospective officer buys a gun, if his employer does not. But the obligation of the employer is not thus removed. Those local governments which provide the gun comply with the Labor Code; the others do not." (*Id.,* at p. 101.) ▇▇ We agree with *Oakland's* interpretation of section 6401; a reasonable and ordinary interpretation of "furnish," as the court held, concomitantly requires the employer to pay for the safety equipment.

Bendix's attempts to distinguish *Oakland* are unpersuasive. Although the Division was not a party in the action, the decision nevertheless clearly reiterates the obligation of the employer, in the first instance, to provide for the safety and health of employees. The court noted that no administrative decision of the Division was at issue, but stated that if there were a contrary administrative decision, it would be disapproved. (*Id.,* at p. 101.)

For the foregoing reasons, we conclude that the Division had the authority to enforce the laws and standards relating to protective hand coverings at the Bendix facility, did not err in interpreting the law and standards to require the employer to bear the expense, and properly enforced the safety regulation at issue.

The alternative writ is discharged and the petition for writ of mandamus is denied.

Tobriner, Acting C. J., Mosk, J., Clark, J., Richardson, J., Newman, J., and Taylor, J.,* concurred.

Petitioner's application for a rehearing was denied November 15, 1979. Bird, C. J., did not participate therein.

*Assigned by the Acting Chairperson of the Judicial Council.