[Civ. No. 63260. Second Dist., Div. Three. Sept. 27, 1982.]

NATIONAL ELEVATOR SERVICES, INC., Plaintiff and Respondent, v.
DEPARTMENT OF INDUSTRIAL RELATIONS, Defendant and Appellant.

COUNSEL

Michael D. Mason and Stephen S. Handin for Defendant and Appellant.

Reich, Adell & Crost, Julius Reich and Glenn Rothner as Amici Curiae on behalf of Defendant and Appellant.

Barger & Wolen, Robert W. Hogeboom and Sandra I. Weishart for Plaintiff and Respondent.

OPINION

**POTTER, J.**—Defendant Department of Industrial Relations, Division of Occupational Safety and Health, appeals from a judgment granting plaintiff's (National Elevator Services, Inc., dba Republic Elevator Services, Inc.) petition for writ of mandate. The peremptory writ of mandate commands defendant "to issue annual elevator permits based on inspection reports from [plaintiff's] qualified elevator inspectors who are engaged by insurance companies to perform elevator inspections."

The petition alleges that on October 17, 1979, plaintiff was notified by defendant that it would not accept plaintiff's inspection reports unless written evidence was submitted showing that certified inspectors utilized by plaintiff were "also employees of an insurance company." This allegation was admitted in defendant's answer and became a finding of fact in the trial court.

The petition was combined with a count seeking a declaratory judgment that the term "employed by an insurance company" in Labor Code section 7309[1] "does not require that a qualified elevator inspector be an employee of an insurance company, but also encompasses an agency or independent contractor relationship between the inspector and the insurance company."

In its answer to the petition and points and authorities in opposition, defendant asserted that "employed by an insurance company" properly construed requires an actual employer-employee relationship between the insurance company and the inspector. Defendant argued that this construction was required (1) by the statutory context of section 7309, (2) by settled administrative interpretation, (3) by recent failure of passage of proposed legislation eliminating any requirement other than the certification of the inspector's competence, and (4) was reasonable in view of the potential for abuse if elevator inspections are performed by independent contractors who normally are compensated on a fee per inspection basis.[2]

---

[1] Unless otherwise indicated, all references herein to code sections are to Labor Code sections. Section 7309 reads as follows: "The division may cause the inspection herein provided for to be made either by its safety inspectors or by any qualified elevator inspector employed by an insurance company."

Annual inspection of elevators is mandated by sections 7302 and 7304. Qualified inspectors are those certified by defendant pursuant to section 7311.

[2] Defendant asserted in its memorandum that its interpretation of section 7309 improves the quality of the inspections by assuring "that the inspecting entity will bear fi-

Defendant included in its opposition the declaration of Dee A. Swerrie, Principal Safety Engineer, in the employ of defendant since 1966. Mr. Swerrie asserts that throughout this period it has been defendant's express policy "to accept elevator inspection reports for permit purposes, only from its own inspectors, from qualified municipal inspectors, or from qualified inspectors who are actual employees of insurance companies." As proof of this policy, there is attached to the Swerrie declaration an intradivision legal memorandum of August 23, 1972, opining that an employer-employee relationship between the insurance company and the inspector was required. Mr. Swerrie acknowledged that defendant had continued to issue permits based on inspection reports submitted by independent contractors of insurance companies but claimed that this practice was limited to a few individuals and one firm which had been granted "grandfather" exceptions to defendant's above-described policy.

Mr. Swerrie's declaration states: "An underlying reason for [defendant's] reluctance to accept elevator inspection reports from independent contractor inspectors (which we also call 'fee inspectors') is that our experience shows that many fee inspectors are motivated by profit rather than professionalism because the fee inspector's income increases in direct proportion to the number of elevators he inspects." As an example of the effect of such motivation, Swerrie refers to the practice of one fee inspector who continued to operate under the grandfather exception to submit an excessive number of reports annually.

The declaration of Mr. Swerrie states: "I am in possession of correspondence from the States of Washington and Hawaii and from the City of Houston expressing similar concerns about their experience with fee inspectors." Attached to the declaration were copies of such correspondence.

In its points and authorities, defendant cited, as evidence of legislative intent, the failure of 1980 proposed legislation authorizing inspections by "any certified inspector, regardless of by whom he or she is employed."

---

nancial responsibility for faulty inspections by standing with the inspector in a clear employer/employee relationship to which the doctrine of 'respondeat superior' applies, giving the inspecting entity a direct stake in the competence of the inspection not limited by the terms of a policy of insurance."

In response, plaintiff filed the declaration of its attorney showing that several of plaintiff's employees were qualified inspectors and that its inspection business in California arose when an existing independent contractor, who had continued to operate into 1979, died and his customers contacted plaintiff. This resulted in plaintiff seeking to qualify some existing employees. Defendant refused to certify any of plaintiff's employees without "'written evidence that at the time they are conducting the elevator inspection they are in a dual employment relationship with [plaintiff] and the elevator insurance company carrying insurance on the inspected elevator.'"

The declaration further showed that the proposed 1980 legislation was introduced at plaintiff's request on the basis of defendant's letter of October 17, 1979, stating that "[a]lthough at this time we would not initiate or sponsor such a change, [defendant] would not oppose such action," and was dropped when defendant indicated that defendant would not support any such amendment.

The trial court made findings of fact and conclusions of law, including the following:

### "Findings of Fact

"4. Several of [plaintiff's] employees hold certificates issued by [defendant] authorizing the inspection of elevators.

".   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"6. Several insurance companies have engaged [plaintiff] to perform elevator inspections on its behalf.

"7. In the past, [defendant] has accepted elevator inspection reports not only from inspectors who were actual employees of insurance companies but also from inspectors who were engaged by insurance companies to perform inspections on an independent contractor basis.

"8. On October 17, 1979, [defendant] notified [plaintiff] that it would not accept elevator inspection reports from [plaintiff's] inspectors unless written evidence was provided to [defendant] that [plaintiff's] inspectors were also actual employees of an insurance company. (Plaintiff's Exhibit B to Petition for Writ of Mandate and Complaint for Declaratory Relief)

"9. Because [defendant] required written evidence that [plaintiff's] inspectors were also actual employees of an insurance company, several insurance companies have refused to engage [plaintiff] to perform elevator inspections on their behalf.

"13. There is no greater danger to the public if elevator inspections are performed by certified inspectors engaged by insurance companies on an independent contractor basis as opposed to inspections performed by actual employees of the insurance company.

"⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅

### "Conclusions of Law

"1. The word 'employed' as contained in Section 7309 of the Labor Code includes elevator inspectors who are employees, agents or independent contractors engaged by an insurance company to perform elevator inspections.

"2. [Defendant's] interpretation that the word 'employed' as contained in Section 7309 of the Labor Code solely means that an inspector must be an actual 'employee' of an insurance company, is an abuse of discretion.

"3. There is no sufficient legal basis for [defendant's] interpretation that the word 'employed' as contained in Section 7309 of the Labor Code solely means 'employee.'"

A judgment followed. It directed issuance of a peremptory writ commanding defendant to issue annual elevator permits "based on inspection reports from [plaintiff's] qualified elevator inspectors who are engaged by insurance companies to perform elevator inspections on an independent contractor basis." Defendant moved for a new trial on the basis of newly discovered evidence. The motion for new trial was denied. This appeal followed.

### Contentions

Defendant contends that the trial court: (1) abused its discretion in failing to grant the motion for a new trial, and (2) erred in construing section 7309 as authorizing the issuance of elevator permits based on inspection reports submitted by qualified inspectors who are engaged by but are not employees of an insurance company.

Plaintiff contends that: (1) the trial court did not abuse its discretion in denying defendant's motion for a new trial; and (2) the peremptory writ of mandate is based on a correct construction of section 7309.

## Discussion

*Summary*

The newly discovered evidence which defendant submitted with its motion for a new trial could have been discovered and produced at trial with a reasonably diligent effort. Even if this evidence were to be admitted at a new trial, it would not likely produce a different result. Accordingly, we find no abuse of discretion in the denial by the trial court of defendant's motion for a new trial.

The position urged by defendant that section 7309 does not authorize it to accept elevator inspection reports submitted by certified elevator inspectors who are engaged by insurance companies on an independent contractor basis is untenable. It is not justified by the legislative language or legislative history; nor has there been shown any meaningful administrative interpretation. Therefore, we find no error in the issuance of the peremptory writ of mandate which directs defendant to issue elevator permits based on inspection reports from plaintiff's certified elevator inspectors who are engaged by insurance companies to perform elevator inspections.

*No Abuse of Discretion in Denial of Motion for New Trial*

■ The decision to grant or deny a motion for a new trial on the ground of newly discovered evidence rests largely in the discretion of the trial court. The determination of the trial court should not be overturned on appeal unless a clear abuse of discretion is shown. Ordinarily newly discovered evidence is looked upon with suspicion and disfavor. The proponent must show that: (1) the evidence is newly discovered; (2) reasonable diligence has been exercised in its discovery and production; and (3) it is likely to produce a different result. (*Horowitz v. Noble* (1978) 79 Cal.App.3d 120, 137-138 [144 Cal.Rptr. 710].)

The newly discovered evidence which defendant proffered in support of its motion for new trial consisted of seven affidavits, three from representatives of the elevator industry and four from officials from other

states who are responsible for elevator safety and inspection, expressing dissatisfaction with the quality of inspections by fee inspectors.

Defendant failed to make a satisfactory showing that it had been diligent in producing the new evidence. The attachments to the declaration of Mr. Swerrie, filed by defendant in opposition to the plaintiff, belie the claim made by defendant in its points and authorities in support of its notice of intention to move for a new trial that "counsel for defendant ... was not aware of the interest of the industry in the controversy ...." The correspondence attached to the Swerrie declaration includes two letters by an official of the State of Hawaii which refer to the interest (apparently because of a proposal then before the California Legislature) of the McDonald Elevator Company of San Francisco in the matter of fee inspectors. In addition, affidavits submitted by plaintiff in opposition to the motion for new trial show that this legislative effort to amend certain Labor Code sections relating to elevator inspections, including section 7309, brought industry representatives and members of defendant's staff together to discuss whether fee inspectors should be given legislative approval. Plaintiff's affidavits indicate that Ron Craven, one of defendant's seven affiants, testified at a legislative hearing concerning fee inspectors and that defendant's representatives also were present and testified. Defendant cannot be said to have exercised diligence in obtaining and producing evidence from members of the elevator industry. The correspondence defendant had received and its experience in the legislative process were sufficient to have made defendant aware long before trial of the existence of such evidence.

The declaration of Mr. Swerrie carried as attachments correspondence from elevator safety and inspection officials from the States of Washington and Hawaii and the City of Houston. These officials expressed doubts as to the professional abilities of fee inspectors. In light of the fact that defendant was in possession of such documents, there is little reason to believe that with reasonable diligence defendant could not have discovered and produced at the trial the four similar affidavits from Washington, North Carolina, Arkansas, and Wisconsin which were proffered at the hearing on the motion for a new trial.

Defendant's lack of diligence in obtaining and producing evidence is not the only ground which supports the trial court's ruling denying the motion for new trial. The motion was also properly denied because the proffered evidence would not produce a different result at the trial.

The affidavits generally repeat the message of Mr. Swerrie that remuneration on a per-elevator basis gives fee inspectors an economic incentive to make hasty inspections. The new evidence in the affidavits is, therefore, cumulative, and its probative value is weakened because it relates to jurisdictions which may not place elevator inspectors under the degree of regulatory control which exists in this state.[3] More importantly, however, the new evidence could not produce a different result at a new trial; it does not address the fundamental question of the meaning of section 7309, because it does not show that any such evidence was a factor in the adoption of section 7309 by our Legislature.

*"Elevator Inspector Employed by an Insurance Company" Includes Independent Contractors*

At the heart of our controversy is the phrase "employed by an insurance company" in section 7309 which language was adopted by the Legislature in 1917. (Stats. 1917, ch. 74, § 4, p. 86.) The term "employed by" is not limited solely to employee-employer situations, but also is generally used to refer to independent contractor relationships. (See e.g., *D. I. Chadbourne, Inc.* v. *Superior Court* (1964) 60 Cal.2d 723, 735 [36 Cal.Rptr. 468, 388 P.2d 700]; *General Insurance Co.* v. *Commerce Hyatt House* (1970) 5 Cal.App.3d 460, 469 [85 Cal.Rptr. 317]; *Schaefer* v. *Berinstein* (1960) 180 Cal.App.2d 107, 115 [4 Cal. Rptr. 236], disapproved on other grounds in *Jefferson* v. *J. E. French Co.* (1960) 54 Cal.2d 717, 719-720 [7 Cal.Rptr. 899, 355 P.2d 643]; *Miller* v. *Long Beach Oil Dev. Co.* (1959) 167 Cal.App.2d 546, 552 [334 P.2d 695].) In *Cal. State Employees Assn.* v. *Trustees of Cal. State Colleges* (1965) 237 Cal.App.2d 541 [47 Cal.Rptr. 81], it was held that nonemployee architects were "'employed by'" the state colleges. The *Cal. State* court stated (*id.*, at p. 543): "Although independent contractors, the architects are persons employed by the institutions."

---

[3]California Administrative Code, title 8, section 3003, subdivision (e), provides safeguards against dishonest, incompetent and careless inspectors. It states:

"Certificates of competency may be revoked by the division, after a hearing, for failure to submit true reports concerning the condition of an elevator, or for conduct deemed by the division to be contrary. to the best interests of elevator safety or of the division.

"Certificates may also be revoked, after a hearing, when physical infirmities develop to a point where it appears that an inspector can no longer perform his duties in a thorough and safe manner.

"Certificates may be suspended by the division, after a hearing, for periods up to six months for infractions not deemed serious enough to revoke the certificate."

In *Clark* v. *Dziabas* (1968) 69 Cal.2d 449, 451 [71 Cal.Rptr. 901, 445 P.2d 517], the court stated that an auto owner's liability may be based on "the negligence of any agent, *whether employee or independent contractor, employed by* him to inspect or repair the brakes." (Italics added.)

There is no evidence to indicate that the Legislature intended other than this normal meaning be given to the term "employed by" as used in section 7309. Defendant admits that the term "'employed' is capable of varying interpretations" but argues that because it is used in the context of "promoting the safety of elevator passengers" and "[t]he whole notion of elevator inspections for profit on a piecework basis simply cannot be reconciled in a manner consistent with elevator safety . . . . the word 'employed' cannot in this context be given as broad a meaning as [plaintiff] would like." But there is no logical connection between independent contractor status and piecework compensation. Employees may be so compensated and independent contractors (for example, attorneys) often work at hourly rates. So the avoidance of motivation to undertake an excessive number of inspections does not justify defendant's limited interpretation of the section.

Neither the Occupational Safety and Health Standard Board nor its predecessor the Industrial Safety Board has adopted any regulation (properly referred to as an "occupational safety and health standard" (§ 142.3)) which supports defendant's construction of section 7309. Defendant argues, to the contrary, that California Administrative Code, title 8, section 3003, which sets forth the qualifications for certified inspectors, supports its contention that private sector elevator inspectors must be employees of an insurance company. We disagree. That regulation, like section 7309, specifies in subdivision (a) only that applicants "be employed by a licensed insurance company." As above demonstrated, this language is consistent with independent contractor status. Subdivision (c) of section 3003 does not add anything to defendant's argument. Assuming that "employed," as used in that subdivision, means the same as in subdivision (a), a municipality which "maintains an elevator inspection organization operating under ordinances or rules at least equivalent to the Elevator Safety Orders of the Division of Industrial Safety," does not necessarily make its inspectors employees.

The only pertinent appellate court discussion of section 7309 is *Barbaria* v. *Independent Elevator Co.* (1956) 139 Cal.App.2d 474 [285 P.2d 91]. Though the court's comments were not necessary to its hold-

ing, they clearly recognize the propriety of elevator inspections by qualified inspectors who were not employees of insurance companies. The court said (*id.*, at p. 478): "Permits for elevator operation are issued annually by the Division of Industrial Safety of the California Department of Industrial Relations. Permits are based on reports of state inspectors. These are a few full time state elevator inspectors, but most of them are specially certified by the state and must be employed as elevator inspectors by an insurance company or an organization of the type of Atwell herein which inspect[s] elevators for insurance companies." (See also, *Bianchi* v. *Western Title Ins. & Guar. Co.* (1970) 14 Cal.App.3d 235, 245 [96 Cal.Rptr. 750].)

The "Atwell" referred to in the opinion is Atwell, Vogel & Sterling, Inc., one of the companies referred to in defendant's declaration in opposition as having been permitted to submit elevator inspection reports until it ceased its operations "a few years" after 1966. Though the opinion in *Barbaria* does not express a considered judgment as to the meaning of section 7309, at the very least it recognized a long-standing practice for inspections to be made by independent contractors of insurance companies.

Defendant's attempt to find support for its interpretation in the legislative failure in 1980 to adopt the amendment to section 7309 proposed by plaintiff merits little discussion. The bill was not defeated; it was withdrawn. Moreover, it did not deal with the legitimization of an independent contractor status for fee inspectors of insurance companies since it eliminated entirely the requirement that an insurance company be involved. In any event, we agree with the view expressed by the Third District in *Miles* v. *Workers' Comp. Appeals Bd.* (1977) 67 Cal. App.3d 243, 248, footnote 4 [136 Cal.Rptr. 508], that unpassed bills "'[a]s evidences of legislative intent . . . have little value.'"

Likewise untenable is defendant's claim that there has been a settled administrative interpretation by defendant's policy of rejecting inspection reports by independent contractor inspectors. There was evidence of a 1972 internal memorandum of defendant opining that inspectors were required to be employees of insurance companies but even defendant's declaration showed a wholesale disregard of this requirement in respect of several fee inspectors who were permitted to continue in business. Defendant's explanation that these operations were permitted to continue on a "grandfather basis" is not convincing since the pertinent language in the section was enacted by the Legislature in 1917 and

there is no showing these firms began operations before that time. As shown by the comment in *Barbaria,* the practice was well established in 1956 and if the 1972 internal memorandum reflected defendant's policy, it did little to enforce it until the advent of plaintiff's entry into the business. Defendant's showing did not, therefore, invoke the rule that "'[a] course of administrative procedure, or an administrative construction of a statute, which has been long continued, will be accorded great respect by the courts and will be upheld if not clearly erroneous.' (*Los Angeles City School Dist.* v. *Simpson* (1952) 112 Cal.App.2d 70, 75 [245 P.2d 629].)" (*City of Santa Barbara* v. *California Coastal Zone Conservation Com.* (1977) 75 Cal.App.3d 572, 580 [142 Cal.Rptr. 356]; see also *MCA* v. *Franchise Tax Board* (1981) 115 Cal.App.3d 185, 195 [171 Cal.Rptr. 242].)

In any event, the interpretation relied upon by defendant appears to have found expression only in an internal memorandum of staff counsel. As observed by our Supreme Court in *Jones* v. *Tracy School Dist.* (1980) 27 Cal.3d 99, 107 [165 Cal.Rptr. 100, 611 P.2d 441]: "Although we ordinarily defer to the administrative interpretation of a statute adopted by the agency charged with its enforcement [citations], such deference is not appropriate here. The . . . interpretation . . . occurs in an internal memorandum, rather than in an administrative regulation which might be subject to the notice and hearing requirements of proper administrative procedure."

Defendant also argues that its interpretation of section 7309 is appropriate because of its reasonable concern for the potential for abuse and carelessness if elevator inspections are to be performed by independent contractors and the insurance companies utilizing their services are not chargeable with respondeat superior liability for the inspectors' failure properly to perform the inspections. Assuming, without deciding, that an insurance company undertaking to provide an inspection report would not have a nondelegable duty, this concern might be the basis for adoption of an occupational safety and health standard assuring such responsibility. But this is not defendant's function.

Although defendant has broad powers to administer and enforce "laws and lawful standards and orders, or special orders" relating to employee safety (§ 6307; see also § 6308), it no longer possesses the authority to promulgate new regulations. Section 142.3, enacted in 1977, provides: "The [Occupational Safety and Health Standards] board shall

be the only agency in the state authorized to adopt occupational safety and health standards."

Defendant does have the authority to issue "special orders," provided they are: (1) to correct an unsafe condition, device or place of employment which cannot be made safe by existing standards or orders of the standards board, and (2) applicable to a specifically described employment or place of employment. (§ 6305.) Since defendant does not contend that either of these two conditions has been met, its policy of requiring private sector elevator inspectors to be employees of an insurance company cannot be characterized as a "special order."

If defendant's narrow interpretation of section 7309 were consistent with the legislative language and history or if a consistent administrative interpretation to that effect were shown, defendant's action in rejecting plaintiff's inspections would be within the authority granted to it under sections 6307 and 6308. But, as above demonstrated, this is not the case. Consequently, defendant has improperly attempted to exercise the quasi-legislative function reserved to the board when it acts solely on the basis of its reasonable concern for a potential for abuse and carelessness. As our Supreme Court noted in *Carmona* v. *Division of Industrial Safety* (1975) 13 Cal.3d 303, 306, footnote 1 [118 Cal.Rptr. 473, 530 P.2d 161], referring to the California Occupational Safety and Health Act of 1973: "The new legislation effected a considerable reorganization of the statutory provisions governing the activities of the Division of Industrial Safety, and estalished a new body, the Occupational Safety and Health Standards Board, as the new 'legislative' branch of the agency empowered to promulgate general safety and health orders and standards. (See Lab. Code, § 140 et seq.)"

Defendant's conduct contrasts with that which our Supreme Court found was appropriate for it in *Bendix Forest Products Corp.* v. *Division of Occupational Saf. & Health* (1979) 25 Cal.3d 465 [158 Cal. Rptr. 882, 600 P.2d 1339]. In *Bendix*, the court held that the division properly exercised its authority under sections 6307 and 6308 to apply to a specific employment situation a statutory requirement which had, by an Administrative Code regulation, been ruled applicable thereto. In doing so, the court commented that this interpretation had "'long stood unchallenged'" and that such action was therefore "'reasonable and within the agency's authority.'" (25 Cal.3d at p. 472.)

From the foregoing, we conclude that the trial court has correctly construed section 7309 and that there is no error in its judgment requiring defendant to apply that construction.

The judgment is affirmed.

Klein, P. J., and Lui, J., concurred.