[Civ. No. 33121. Fourth Dist., Div. Two. Mar. 5, 1985.]

SKYLINE HOMES, INC., et al., Plaintiffs and Appellants, v.
DEPARTMENT OF INDUSTRIAL RELATIONS et al.,
Defendants and Respondents.

COUNSEL

Reid, Babbage & Coil, Reid & Hellyer, David G. Moore and Richard D. Roth for Plaintiffs and Appellants.

O'Melveny & Myers, Charles G. Bakaly, Jr., Robert A. Siegel, Victoria D. Stratman, Musick, Peeler & Garrett, Richard J. Simmons and Thomas E. Hill as Amici Curiae on behalf of Plaintiffs and Appellants.

H. Thomas Cadell, Jr., for Defendants and Respondents.

OPINION

**MORRIS, P. J.**—Appeal from an order granting summary judgment.

*Facts*

The facts of this case are not in dispute. Defendants, Johannes and Cozine, both salesmen employed by plaintiff Skyline Homes, Inc., worked what is commonly known as a fluctuating workweek which guarantees a fixed minimum salary to employees who work varying hours from week to week. Depending on factors such as business volume and the season of the year, the length of defendant's workweek varied from less than 40 hours some

weeks to over 40 hours other weeks. Although Johannes and Cozine were guaranteed a fixed minimum salary, they were paid overtime compensation for all work performed over 40 hours in any given workweek. The dispute in this case concerns the method used by Skyline in computing such overtime compensation for its employees who worked a fluctuating workweek.

Defendants filed a claim against Skyline with defendant Department of Industrial Relations, Division of Labor Standards Enforcement (DLSE), alleging that Skyline improperly computed their overtime pay. The DLSE instituted proceedings against Skyline to compel payment. Skyline filed the complaint herein seeking a declaration that the procedure it used in computing overtime pay for its salaried employees who worked a fluctuating workweek was proper. The trial court granted summary judgment in favor of DLSE and Skyline has appealed.

The California Industrial Welfare Commission (IWC) is authorized to promulgate wage orders regulating wages, hours and conditions of employment for employees throughout the state. (Lab. Code, § 1173.)[1] Wage order 1-76 was adopted pursuant to this authority.

Wage order 1-76 was promulgated in 1976 and covers the manufacturing industry in California. It provides as follows:

"3. Hours and Days of Work.

"(A) No employee eighteen (18) years of age or over shall be employed more than eight (8) hours in any one workday or more than forty (40) hours in any one workweek unless the employee receives one and one-half (1½) times such employee's regular rate of pay for all hours worked over forty (40) hours in the workweek. Employment beyond eight (8) hours in any one workday or more than six (6) days in any one workweek is permissible provided the employee is compensated for such overtime at not less than:

"(1) One and one-half (1½) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours up to and including twelve (12) hours in any one workday, and for the first eight (8) hours worked on the seventh (7th) workday; and

"(2) Double the employee's regular rate of pay for all hours worked in excess of twelve (12) hours in any one workday and for all hours worked in excess of eight (8) hours on the seventh (7th) workday in any one work-

---

[1]All references are to the Labor Code unless otherwise designated.

week." (Cal. Admin. Code (1976) tit. 8, § 11180; Cal. Admin. Code (1984) tit. 8, § 11040.)

The DLSE is the agency empowered to administer and enforce the IWC wage orders. (§§ 61, 1193.5.) The DLSE has interpreted wage order 1-76 to mean that an employee's "regular rate of pay" must be computed by dividing the weekly straight time salary by no more than 40 hours regardless of how many hours the employee worked. In effect, the DLSE interpretation equates "regular" with normal, and therefore overtime should not be used in the computation of "regular rate of pay." Under this interpretation, the employee's weekly salary is considered straight time compensation for the employee's "regular" hours, i.e., nonovertime hours of no more than 40 in a week. For example, assuming a salaried employee works 50 hours in one week, the DLSE would compute overtime as follows:

$500÷40 hours=$12.50 per hour ("regular rate of pay")
50 hours−40 hours=10 overtime hours
10 hours×$18.75 (1½ of regular rate of pay)=$187.50
$ 187.50 overtime compensation
+ 500.00 fixed weekly salary
$ 687.50 total compensation

Thus, under the DLSE interpretation, wage order 1-76 prohibits the use of more than 40 hours in a workweek in establishing the "regular rate of pay" to be used in computing overtime compensation of salaried employees. (See the DLSE Operations and Procedures Manual, 3-78, § 10.49, p. 6.)

The fluctuating workweek method of calculation establishes the "regular rate of pay" by dividing the employee's weekly salary by the number of hours actually worked in a given week, no matter how many hours per day or how many hours per week that may be. Thus, for these fluctuating workweek employees, overtime hours, i.e., hours worked over 40, are compensated at one-half the rate of pay thus determined in addition to the salary payment because the salary is treated as compensation at the straight time regular rate for all hours worked. Under this method the more hours an employee works overtime, the lower the "regular rate" becomes.

Applying this procedure Skyline computed overtime for defendants Johannes and Cozine in the following manner (assuming the sales employee worked 50 hours in a particular workweek and his fixed weekly salary was $500):

$500/week ÷ 50 hours = $10 ("regular rate of pay")
(50 hours − 40 hours = 10 overtime hours)
10 hours × $5 (½ regular rate of pay) = $50.
$    50 overtime compensation
+ 500 fixed weekly salary (representing straight time compensation for all hours worked)
$   550 total compensation for one week

Under this method of calculating overtime for fluctuating workweek employees, the "regular rate of pay" is reduced as the number of overtime hours is increased in a given workweek. If an employee works 60 hours in one week, his "regular rate of pay" will be substantially less than if he works 40 hours.

### Contentions and Discussion

Skyline contends that the trial court erred in upholding the interpretation of wage order 1-76 adopted by the DLSE which prohibits the use of the fluctuating workweek method of computing overtime compensation. Specifically, Skyline argues: (1) federal law provides for the fluctuating workweek method of overtime computation, and in the absence of California law or regulation to the contrary, and in view of the similar language and purpose of the California and federal statutes, federal law should be followed; (2) neither the California Labor Code nor the Industrial Welfare Commission wage orders preclude the use of the fluctuating workweek method of overtime compensation; (3) the DLSE's operations and procedures manual which interprets wage order 1-76 as prohibiting the use of the fluctuating workweek is an improper exercise in rule making and was not promulgated in accordance with law.

Skyline is correct in stating that federal law permits the use of the fluctuating workweek. However, we reject the remaining contentions for reasons that will be explained.

### Federal Method and California Law

The Fair Labor Standards Act of 1938 (FLSA), 29 United States Code, sections 201-219 provides at section 207 (a)(1) that ". . . no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce . . . *for a workweek longer than forty hours* unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half

times the *regular* rate at which he is employed." (Italics added.) Thus, where an employee works over forty hours in one week, overtime compensation is computed at one and one-half times the employee's "regular rate" of pay.

Under the federal method, where an employee receives a salary which by agreement between the employer and employee is designed to provide basic nonovertime compensation for all hours worked (i.e., the fluctuating workweek) and the employee is compensated by a fixed weekly salary, the employee's "regular rate" of pay is determined by dividing the number of hours actually worked in the particular workweek into the amount of the fixed weekly salary (rather than dividing the salary by the standard nonovertime workweek of 40 hours) for overtime compensation. (*Overnight Motor Transp. Co.* v. *Missel* (1942) 316 U.S. 572 [86 L.Ed. 1682, 62 S.Ct. 1216] rehg. den. 317 U.S. 706 [87 L.Ed. 563, 63 S.Ct. 76].) In fact, the United States Department of Labor has adopted regulations regarding the fluctuating workweek. (29 C.F.R. § 778.114.) The regulations issued under the Walsh-Healey Act, 41 United States Code sections 35-45, and the wage and hour division bulletin interpreting the FLSA both authorize the use of the fluctuating workweek.

Skyline argues that the IWC was presumably well aware of these regulations and the *Overnight* decision when it adopted the overtime provisions and "regular rate of pay" concept, and thus it should be assumed that the IWC intended "regular rate of pay" to carry the same meaning as it had under federal law.

Amicus argues that the IWC intended to adopt and follow all established overtime standards under federal law because it adopted the definition of "workday" and "workweek" under the Walsh-Healey Act federal law, thus presumably the IWC also adopted the federal definition of "regular rate of pay."

Both of these arguments ignore the fact that the IWC wage order clearly adopts a different provision for overtime compensation than that provided under federal law. The FLSA provides that ". . . no employer shall employ any of his employees . . . for a *workweek longer than forty* hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." (29 U.S.C. § 207(a)(1), italics added.)

As can be seen, under the FLSA, overtime compensation is required *only* after an employee works more than 40 hours in any workweek. Thus under

the FLSA, the "workweek" may properly constitute the unit of time used to determine whether overtime compensation is due.

On the other hand, wage order 1-76 specifically provides "No employee . . . shall be employed *more than eight (8) hours in any one workday or more than forty (40) hours* in any one workweek unless the employee receives one and one-half (1½) times such employee's regular rate of pay for all hours over forty (40) hours in the workweek." (Cal. Admin. Code (1976) tit. 8, § 11180, subd. 3(A), italics added.)

Unless the insertion of the limitation with respect to the eight-hour day is to be rendered meaningless, we must assume that the IWC intended to impose a different standard for determining overtime than that allowed under the FLSA. If, as seems obvious, the IWC intended to employ an eight-hour day standard and to discourage the use of longer work days, the fluctuating workweek would not effectuate this purpose. The incompatibility of the fluctuating workweek with the eight-hour day limitation can best be demonstrated by example. Assume a salaried employee works the following schedule of hours:

|         | Mon. | Tues. | Wed. | Thurs. | Fri. | Sat. | Sun. | Total |
|---------|------|-------|------|--------|------|------|------|-------|
| Week 1: | 12   | 14    | 14   | 8      | 16   | 10   | 14   | 88    |
| Week 2: | 12   | 8     | 9    | —      | 10   | —    | —    | 39    |

Under the fluctuating workweek method of computation, an employee salaried at $350 per week would be entitled to $445.45 for the first week based on 48 hours of overtime (i.e., hours in excess of 40):

The salary of $350 would be divided by 88 hours to establish the "regular rate" of $3.97+ per hour. One half of that rate ($1.98+) multiplied by the 48 overtime hours equals approximately $95.45 as the "overtime" pay for that week.

In the second week the employee would only be entitled to his regular salary of $350 because he failed to exceed 40 hours in the week although he had worked overtime hours on three days of that week.

Under the IWC order 1-76 as interpreted by DLSE:

The salary of $350 would be divided by 40 to obtain the regular rate of pay of $8.75. The time and a half rate would be $13.12 and the double time rate (hours over 12 in any one day) would be $17.50.

For the first week, the employee would be entitled to 40 hours at straight time rate of $8.75, 34 hours at time and one-half, and 14 hours at double time for a total of $691 overtime pay.

In the second week the employee would be entitled to 32 hours at straight time rate, and 7 hours at time and one-half or a total of $21.84 in overtime.

Clearly, the DLSE interpretation is more compatible with the intent of wage order 1-76. ■ Moreover, the DLSE is specifically empowered to administer and enforce IWC orders (§§ 61, 1193.5) and is the agency charged with interpreting the intent of the IWC. The DLSE's interpretation is entitled to great weight and under established principles of statutory construction, unless it is clearly unreasonable, it will be upheld. (*Triad Data Services, Inc.* v. *Jackson* (1984) 153 Cal.App.3d Supp. 1, 13 [200 Cal.Rptr. 418].)

■ Amicus argues that the purpose and intent of federal and state law is to spread work more evenly throughout the work force by discouraging employers from requiring more than 40 hours work and to compensate employees for the strain of working long hours, and that the fluctuating workweek comports with this purpose. This argument ignores the fact that in California overtime wages are also recognized as imposing a premium or penalty on an employer for using overtime labor, and that this penalty applies to excessive hours in the workday as well as in the workweek.

In *Industrial Welfare Com.* v. *Superior Court* (1980) 27 Cal.3d 690 [166 Cal.Rptr. 331, 613 P.2d 579], the California Supreme Court upheld the wage statement of basis of wage order 1-80, which stated in part as follows: " 'The Commission relies on the imposition of a premium or penalty pay for overtime work to regulate maximum hours consistent with the health and welfare of employees covered by this order. Employers have objected to the requirement for overtime pay after 8 hours a day and in 1976 they urged a 10-hour day without overtime, asserting that employees favored such a schedule to save travel time and expense and to have more leisure for weekend trips. The Commission provided for such alternative in the 1976 Order, specifying conditions under which employees could exercise a choice.[2] In the review just completed, employee representatives [o]n the wage board and in public hearing asked that the provisions for four 10-hour days be deleted. Some complained that once employees voted for such a

---

[2]Those conditions require that an agreement be voluntarily executed by the employer and at least two-thirds of the affected employees. (Cal. Admin. Code (1976) tit. 8, § 11180, subd. (3)(B).) There is no evidence of such an agreement in the case currently before us.

schedule there was no way to get out of it even when employees found, from experience, that it was detrimental to their welfare. Employer representatives on wage boards and in public hearing proposed an alternative of three or four workdays of not more than 12 hours each without overtime. In view of the accepted 8-hour day standard, social experience, and testimony by employees the Commission determined that a 12-hour day generally is detrimental to the welfare of employees. Where, in special circumstances, employees and employer agree in collective bargaining that it is not detrimental, provision is made for such exception as described below. The Commission did retain the provision for the week of four 10-hour days, and made it more flexible at the request of some employers and employees by allowing the four days to be worked any time within the work week so long as the employee received two consecutive days off. Previously the four days had to be scheduled within five consecutive days.

" 'At the same time the Commission acknowledges the employees' problem of being trapped in such a schedule when it proved to be detrimental and provided a means of voting out such a schedule (Section 3(B)(4)) under reasonable conditions which protect the employer against frivolous or too frequent changes.' " (*Id.*, at p. 713.)

Defendant cites *Hays* v. *Bank of America* (1945) 71 Cal.App.2d 301 [162 P.2d 679] for the proposition that overtime is not intended to be penal in nature, but fails to note that *Hays* arose under the FLSA and not under state legislation. In the face of the DLSE's written policy and the purpose for which wage order 1-76 was enacted, it is clear that plaintiffs' contentions regarding the IWC's intentions fail to recognize one of the primary functions under state law of the requirement of overtime pay.

Premium pay for overtime is the primary device for enforcing limitations on the maximum hours of work. (*California Manufacturers Assn.* v. *Industrial Welfare Com.* (1980) 109 Cal.App.3d 95, 111 [167 Cal.Rptr. 203].) ■ Remedial statutes should be liberally construed to promote the general object sought to be accomplished. (*Industrial Welfare Com.* v. *Superior Court, supra,* 27 Cal.3d at p. 713.) ■ In view of the dissimilar language and purpose of the California statute and regulation, we conclude that the DLSE has correctly interpreted wage order 1-76 to preclude the use of the fluctuating workweek method of overtime compensation.

■ Amicus further argues that the DLSE enforcement policy is preempted by federal law. Not so. Title 29 United States Code section 218 (a), specifically states that "No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or munic-

ipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or *a maximum workweek lower than the maximum workweek established under this chapter, . . .*" (Italics added.)

Further, no other language in the FLSA indicates Congress intended it to be an exclusive regulatory measure. Federal regulations recognize that various state and local laws will require payment of minimum hourly, daily or weekly wages different from minimums set forth in the Labor Standards Act, and provide that where state or local laws provide greater protection to the employee they shall be taken to override the provisions of the FLSA. (See 29 C.F.R. § 778.5.)[3]

Amicus argues that while this provision authorizes states to adopt higher minimum wage rates and lower overtime thresholds than those prescribed by the FLSA, it does not authorize state laws that "go *beyond* specifying what hours constitute overtime hours" and allow employees to compute overtime by a method different than that utilized under the FLSA. The argument ignores the realities. The specification of a lower maximum workweek or of a minimum workday is rendered meaningless if the state is deprived of the power to enforce the lower maximum. Because the requirement of the payment of an overtime rate is the sole method by which the maximum hour provisions are made effective, it follows that 29 United States Code, section 218 (a), necessarily authorizes the state to require the payment of an overtime rate that recognizes the state's imposition of a maximum workday and/or a lower maximum workday.

In other states where a maximum eight-hour workday has been provided by statute, the courts have rejected the identical argument presented by amicus. (See *Webster* v. *Bechtel* (Alaska 1980) 621 P.2d 890 and *Glick* v. *State, Montana Dept. of Institutions* (1973) 162 Mont. 82 [509 P.2d 1].

---

[3]Specifically 29 Code of Federal Regulations, section 778.5 provides: "Relation to other laws generally.

"Various Federal, State and local laws require the payment of minimum hourly, daily or weekly wages different from the minimum set forth in the Fair Labor Standards Act, and the payment of overtime compensation computed on bases different from those set forth in the Fair Labor Standards Act. Where such legislation is applicable and does not contravene the requirements of the Fair Labor Standards Act, nothing in the act, the regulations or the interpretations announced by the Administrator should be taken to override or nullify the provisions of these laws. Compliance with other applicable legislation does not excuse noncompliance with the Fair Labor Standards Act. Where a higher minimum wage than that set forth in the Fair Labor Standards Act is applicable to an employee by virtue of such other legislation, the regular rate of the employee, as the term is used in the Fair Labor Standards Act, cannot be lower than such applicable minimum, for the words 'regular rate at which he is employed' as used in section 7 must be construed to mean the regular rate at which he is lawfully employed."

Alaska has a statute providing for a maximum eight-hour workday rather than the standard set by the FLSA, Montana has both statutory and constitutional provisions providing for the eight-hour day. Both courts relied on a passage from the New Jersey appellate court's opinion in *State* v. *Comfort Cab, Inc.* (1972) 118 N.J.Super. 162 [286 A.2d 742, 748]: "The federal act, 29 U.S.C.A. § 218(a), mandates compliance with a state maximum workweek requirement lower than that set by the federal act. Though 'workweek' is not defined in the federal act, it is clearly the intent of the Congress that a lower state maximum hour regulation, creating an overtime arrangement more favorable to an employee than that contained in § 207 of the federal act, should prevail. Such an interpretation is dictated by the plain meaning of the statutory language. 'Maximum workweek' does not in fact limit the number of hours an employee may work. [Citations.] It must refer to that number of excess hours worked for which an overtime rate must be paid. This conclusion is further evidenced by the utilization of the term 'workweek' in 29 U.S.C.A. § 207, where it is used in reference to the number of hours worked in excess of which the overtime rate must be paid. See, *e.g.,* 29 U.S.C.A. § 207(a)(2) (A). The term 'maximum workweek' in 29 U.S.C.A. § 218(a) is synonymous with maximum hour/overtime. *Accordingly, the requirement of 29 U.S.C.A. § 218(a) that a lower state maximum workweek be enforced mandates the enforcement of a state maximum hours/overtime provision more favorable to the employee than that set by the federal act.*"

Since the number of hours required to be worked before the overtime rate is applied is less under wage order 1-76, as properly interpreted by the DLSE, than under the FLSA, the State of California provides for a lower maximum workweek within the meaning of United States Code, section 218 (a), and the DLSE policy comes within the express savings clause of that statute.

### Validity of the DLSE Enforcement Policy

Plaintiffs contend that the DLSE relied on an Attorney General's opinion in rejecting the fluctuating workweek method and argue that the opinion was invalid for a number of reasons. The opinion was issued in May 1957 in response to a question from the IWC as to whether language in a wage order which was a precursor to wage order 1-76 precluded payment of overtime on the basis of a fluctuating workweek and, if not, whether the IWC had authority to modify that wage order to prohibit the fluctuating workweek method if it wished to. The Attorney General's opinion stated that the fluctuating workweek method was inconsistent with the IWC wage orders. The IWC, on notice of the Attorney General's May 1957 opinion,

enacted regulations shortly thereafter without expressly permitting the fluctuating workweek and has continued to omit permission of that method of computing overtime compensation from subsequent wage orders. It seems apparent that, correct or incorrect, the IWC relied on the Attorney General's opinion and did not consider it necessary to add language specifically prohibiting the fluctuating workweek.

■ Plaintiffs next contend that because wage order 1-76 does not specifically prohibit the fluctuating workweek the DLSE has exceeded its charter to merely enforce the wage orders. Plaintiffs contend that the DLSE is rule making and has failed to comply with the provisions of the Administrative Procedure Act (APA) (Gov. Code, § 11340 et seq.), which requires state agencies to follow certain procedural requirements for the adoption of regulations.

The relationship between the DLSE and the IWC is similar to that between the Occupational Safety and Health Standards Board and the Division of Occupational Safety and Health. The division is charged with the power to "adequately enforce and administer all laws and lawful standards and orders . . ." regarding safety in workplaces (§§ 60.5, 6307). The standards board, like the IWC, is responsible for adopting standards (§§ 140, 142.3).

In the case of *Bendix Forest Products Corp.* v. *Division of Occupational Saf. & Health* (1979) 25 Cal.3d 465 [158 Cal.Rptr. 882, 600 P.2d 1339], the standards board had adopted a regulation providing that hand protection may be required for employees whose work exposes their hands to dangerous substances, cuts or burns (Cal. Admin. Code, tit. 8, § 3384). Pursuant to this standard the division ordered the employer, a lumber company, to provide hand protection to its employees at company expense. The employer contended that the division was attempting to legislate a new standard and was encroaching on the authority of the standards board. The court held that "[t]he decision of the Division was not a quasi-legislative judgment promulgating a new regulation or standard but rather a specific application of laws and existing regulations. We see no conflict in the exercise of power vis-à-vis the Standards Board." (*Id.,* at p. 471.)

Similarly, in this case, the DLSE is not promulgating regulations. The regulation is wage order 1-76, properly promulgated by the IWC. The DLSE is charged with enforcing the wage orders, and to do so, it must first interpret them. The enforcement policy is precisely that—an interpretation— and need not comply with the APA.

*Remaining Contentions*

■ The DLSE contends that the fluctuating workweek is inconsistent with the overtime provisions of wage order 1-76 because order 1-76 prohibits employment over eight hours in one day and the FLSA prohibits only a workweek over 40 hours. The DLSE contends that the FLSA method would allow employers to work employees over 8 hours in a day without overtime compensation as long as the employee did not work over 40 hours in a week.

Skyline counters with the argument that the fluctuating workweek does not conflict with wage order 1-76 because an employee who worked more than 8 hours a day, but less than 40 hours in a week, would be compensated for overtime by utilizing the same formula as if the employee worked over 40 hours. For example, if an employee worked 39 hours in one week but 12 hours in one day, one would simply divide 39 into the weekly salary and determine overtime compensation for the extra 4 hours worked in one day in that manner. This argument again fails to take into account the fact that a purpose of the overtime premium pay requirement is to discourage long daily hours which the commission has determined are detrimental to the welfare of employees, and further, that the overtime is to discourage the use of daily schedules in excess of eight hours. Clearly, a method of computation of overtime that would encourage patterns of employment using 10- or 12-hour days would be inconsistent with wage order 1-76.

The remaining contentions are constitutional in nature. First, amicus contends that the DLSE's enforcement policy contravenes the equal protection clause because it applies to salaried employees and does not apply to employees working on a commission, piece rate or other wage basis. However, the method of computing overtime compensation for employees other than salaried employees is not before us. Plaintiffs' pleadings in the trial court specifically stated that "The dispute in this case centers on the proper method of overtime computation for employees who receive a fixed salary but work a variable number of hours each week. This case does not concern employees working on a commission, piece rate or other wage basis." There has been no showing that those employees are similarly situated to salaried employees.

■ Amicus next contends that the enforcement policy violates the contracts clause of the United States Constitution. Amicus bases this contention on *Allied Structural Steel Co.* v. *Spannaus* (1978) 438 U.S. 234 [57 L.Ed.2d 727, 98 S.Ct. 2716], where a state statute modified employers' obligations to fund pension plans for its employees. The court found that the statute

imposed completely unexpected liability in potentially disabling amounts and nullified express terms of the company's contractual obligation. It further found that the law retroactively modified the compensation the company had agreed to pay its employees from 1963 to 1974 and did so in an area where "the element of reliance was vital—the funding of a pension plan." (*Id.*, at p. 246 [57 L.Ed.2d at p. 737].)

The present dispute does not involve the retroactive application of any law or regulation. Wage order 1-76, promulgated in 1976, was applicable to the manufacturing industry in California and covered plaintiff's employees. The dispute in this case arose over the method used by Skyline in computing overtime compensation for its employees from 1976 to 1978. Wage order 1-76 was in effect at all times pertinent to the dispute. What Skyline calls the DLSE "enforcement policy" is in fact an interpretation of a preexisting wage order.

Further, the contract clause leaves room for the sovereign power of the state to safeguard its citizens. ■ It has been well established that laws regulating hours and conditions of employment constitute a reasonable exercise of the state's sovereign power to protect employees working within its boundaries. (See *Holden* v. *Hardy* (1898) 169 U.S. 366, 397 [42 L.Ed. 780, 792, 18 S.Ct. 383].)

■ Amicus also contends that the DLSE policy places an impermissible burden on interstate commerce because employers with nationwide wage programs will have to deviate from those programs and suffer added costs. However, when a legitimate local purpose is found, the burden on interstate commerce must be *clearly* excessive before the commerce clause is found to be violated. (*Pike* v. *Bruce Church, Inc.* (1970) 397 U.S. 137, 142 [25 L.Ed.2d 174, 178, 90 S.Ct. 844].) It is well settled that protection of employees is a legitimate state interest, and there has been no showing of a significant effect on commerce.

The judgment is affirmed.

Kaufman, J., and Rickles, J., concurred.

Petitions for a rehearing were denied April 2, 1985, and the opinion was modified to read as printed above. Kaufman, J., was of the opinion that the petition should be granted. Appellants' petition for review by the Supreme Court was denied May 29, 1985.