Filed 1/14/16

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| HECTOR ALVARADO, | |
| Plaintiff and Appellant, | E061645 |
| v. | (Super.Ct.No. RIC1211707) |
| DART CONTAINER CORPORATION OF CALIFORNIA, | OPINION |
| Defendant and Respondent. | |


APPEAL from the Superior Court of Riverside County. Daniel A. Ottolia, Judge. Affirmed.

Lavi & Ebrahimian, Joseph Lavi, Jordan D. Bello; and Dennis F. Moss for Plaintiff and Appellant.

Best Best & Krieger, Howard Golds and Elizabeth A. Han for Defendant and Respondent.


1

# I

## INTRODUCTION

Plaintiff Hector Alvarado (plaintiff) appeals summary judgment entered in favor of defendant Dart Container Corporation of California (defendant). The facts are undisputed. This appeal raises the sole question of law of whether defendant's formula for calculating overtime on flat sum bonuses paid in the same pay period in which they are earned is lawful. We conclude it is. There is no California law specifying a method for computing overtime on flat sum bonuses, and defendant's formula complies with federal law, which provides a formula for calculating bonus overtime. We accordingly affirm summary judgment in favor of defendant.

# II

## FACTS AND PROCEDURAL BACKGROUND

The following summary of facts is based on the parties' joint statement of undisputed material facts. Defendant is a producer of food service products, including cups and plates. Plaintiff began working for defendant in September 2010, as a warehouse associate, and was terminated in January 2012.

According to defendant's written policy, an attendance bonus would be paid to any employee who was scheduled to work a weekend shift and completed the full shift. The bonus was $15 per day, for working a full shift on Saturday or Sunday, regardless of the number of hours worked beyond the normal scheduled length of a shift.

Defendant calculates the amount of overtime paid on attendance bonuses during a particular pay period as follows:

1. Multiply the number of overtime hours worked in a pay period by the straight hourly rate (straight hourly pay for overtime hours).

2. Add the total amount owed in a pay period for (a) regular non-overtime work, (b) for extra pay such as attendance bonuses, and (c) overtime due from the first step. That total amount is divided by the total hours worked during the pay period. This amount is the employee's "regular rate."

3. Multiply the number of overtime hours worked in a pay period by the employee's regular rate, which is determined in step 2. This amount is then divided in half to obtain the "overtime premium" amount, which is multiplied by the total number of overtime hours worked in the pay period (overtime premium pay).

4. Add the amount from step 1 to the amount in step 3 (total overtime pay). This overtime pay is added to the employee's regular hourly pay and the attendance bonus.

During plaintiff's employment, he earned attendance bonuses during weeks he worked overtime and sometimes double time.

In August 2012, plaintiff filed a complaint for damages and restitution, alleging defendant had not properly computed bonus overtime under California law. Plaintiff's complaint as amended (complaint) alleges the following causes of actions: (1) Failure to pay proper overtime in violation of Labor Code sections 510 and 1194 by not including shift differential premiums and bonuses in calculating overtime wages; (2) Failure to provide complete and accurate wage statements, in violation of Labor Code section 226; (3) Failure to timely pay all earned wages due at separation of employment, in violation

3

of Labor Code sections 201, 202, and 203; (4) Unfair Business Practices, in violation of Business and Professions Code section 17200 et seq.; and (5) civil penalties under the Private Attorneys' General Act of 2004, Labor Code section 2698 et seq. (PAGA).

Defendant filed a motion for summary judgment or, alternatively, for summary adjudication. Defendant argued that defendant's formula for calculating overtime on plaintiff's attendance bonuses, earned during pay periods in which they were earned, was lawful, and there was no legal basis for plaintiff's proposed alternative formula. Defendant further argued federal law applied to calculating overtime on the bonuses because there was no California law providing a formula for calculating overtime on bonuses. Defendant asserted that plaintiff's proposed formula is based solely on California public policy and void regulations from the Division of Labor Standards Enforcement (DLSE) Manual which have no force or effect. Defendant concluded that, since defendant's overtime formula complies with federal law and does not conflict with state law, it is lawful. Therefore plaintiff's entire complaint has no merit.

Plaintiff filed opposition, arguing there was valid California authority, *Marin v. Costco Wholesale Corp.* (2008) 169 Cal.App.4th 804 (*Marin*), applicable in the instant case to calculating overtime on bonuses. Plaintiff further argued that defendant's formula dilutes and reduces the regular rate of pay by including overtime hours when calculating the regular rate of pay used to compute overtime on plaintiff's flat sum bonuses. Plaintiff asserted this violates California wage and hour policy, in which overtime is discouraged. Plaintiff also argued defendant's formula failed to account for all required overtime rates and improperly used a multiplier of .5, rather than 1.5, or 2.0, if applicable.

4

Relying on *Marin, supra,* 169 Cal.App.4th 804, plaintiff argued in his opposition that the formula stated in the DLSE Manual sections 49.2.4.2 and 49.2.4.3 applied. The DLSE Manual formula is as follows:

1.  Multiply regular hours by the employee's hourly rate (regular pay)

2.  Multiply overtime hours by the employee's hourly rate (overtime pay on overtime hours)

3.  Divide flat sum bonus by regular hours (overtime rate), and multiply by 1.5 (overtime pay on bonus)

4.  Add pay for regular hours, bonus, overtime pay on overtime hours, overtime pay on bonus (total pay).

After reviewing the parties' briefs and listening to oral argument, the trial court granted defendant's motion for summary judgment on the following grounds: The facts were undisputed; there was no California law applicable to calculating overtime on bonuses paid in the same pay period in which they were earned; *Marin* is inapplicable; DLSE Manual sections 49.2.4.2 and 49.2.4.3 do not have force of law and are void regulations; in the absence of controlling California law, federal law directing the method of computing overtime on bonuses must be followed; defendant used this federal formula, which was lawful; and therefore there was no basis for liability on any of plaintiff's causes of action.

III

STANDARD OF REVIEW

Plaintiff appeals summary judgment on the ground the trial court erred as a matter

5

of law in ruling that defendant's formula for calculating overtime on flat sum bonuses is lawful. Summary judgment is properly granted when there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476 (*Merrill*).) Here, where the parties agreed to a joint statement of undisputed material facts and there are no disputed facts, we review de novo the trial court's ruling granting defendant's motion for summary judgment. (*Ibid.*)

IV

COMPUTING OVERTIME ON FLAT SUM BONUSES

In addressing the issue of whether defendant's formula for calculating overtime on plaintiff's flat sum bonuses is lawful, we look to federal and state wage and hour law, which in some instances differs substantially, with California laws tending to be more protective of employees. Where federal and California laws conflict, the law most beneficial to employees applies. (*Aguilar v. Association for Retarded Citizens* (1991) 234 Cal.App.3d 21, 28 (*Aguilar*).)

A. *Federal Wage and Hour Law*

Under section 207(a)(1) of the federal Fair Labor Standards Act of 1938, as amended (FLSA),[1] if an employee works over 40 hours in one week, overtime compensation is computed at one and one-half times the employee's regular rate of pay. Section 207(a)(1) provides that "no employer shall employ any of his employees . . . *for a*

_____

[1] 29 United States Code sections 201-219.

*workweek longer than forty hours* unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the *regular* rate at which he is employed." (Italics added.)

As to hourly employees, such as plaintiff, title 29 of the Code of Federal Regulations (CFR) provides at section 778.110(a) that overtime shall be computed as follows: "If the employee is employed solely on the basis of a single hourly rate, the hourly rate is the 'regular rate.' For overtime hours of work the employee must be paid, in addition to the straight time hourly earnings, a sum determined by multiplying one-half the hourly rate by the number of hours worked in excess of 40 in the week. Thus a $12 hourly rate will bring, for an employee who works 46 hours, a total weekly wage of $588 (46 hours at $12 plus 6 at $6). In other words, the employee is entitled to be paid an amount equal to $12 an hour for 40 hours and $18 an hour for the 6 hours of overtime, or a total of $588."

Subdivision (b) of section 778.110 of title 29 of the CFR provides the following formula for computing overtime on a "production bonus" (an incentive to increase production): "If the employee receives, in addition to the earnings computed at the $12 hourly rate, a production bonus of $46 for the week, the regular hourly rate of pay is $13 an hour (46 hours at $12 yields $552; the addition of the $46 bonus makes a total of $598; this total divided by 46 hours yields a regular rate of $13). The employee is then entitled to be paid a total wage of $637 for 46 hours (46 hours at $13 plus 6 hours at $6.50, or 40 hours at $13 plus 6 hours at $19.50)."

7

Title 29 of the CFR section 778.110 does not provide a formula for a flat sum bonus, which is at issue in the instant case. However, title 29 of the CFR section 778.209(a) provides the following formula for bonus overtime in general: "Where a bonus payment is considered a part of the regular rate at which an employee is employed, it must be included in computing his regular hourly rate of pay and overtime compensation. No difficulty arises in computing overtime compensation if the bonus covers only one weekly pay period. The amount of the bonus is merely added to the other earnings of the employee (except statutory exclusions) and the total divided by total hours worked."

B. *California Wage and Hour Law*

Unlike federal law, California statutory law requires overtime pay for work exceeding a maximum workday, as well as for work exceeding a maximum workweek. "Under California law, plaintiffs are entitled to 'no less than one and one-half times the regular rate of pay' for work in excess of eight hours in one workday. (Lab. Code, § 510, subd. (a); see Cal. Code Regs., tit. 8, § 11070, subd. (3)(A)(1)(a) [wage order No. 7-2001].) In this respect, California law is more protective of workers than the federal 'fluctuating workweek' law, which requires one and one-half time overtime compensation only after an employee works more than 40 hours in a workweek." (*Marin, supra,* 169 Cal.App.4th at pp. 806-807, fn. omitted.)

Labor Code section 510 provides that "Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work

8

in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee. Nothing in this section requires an employer to combine more than one rate of overtime compensation in order to calculate the amount to be paid to an employee for any hour of overtime work."

Supplementing state statutory wage law are state regulations, which include wage and hour orders. "The Industrial Welfare Commission (IWC) 'is the state agency empowered to formulate regulations (known as wage orders) governing employment in the State of California.' [Citation.] . . . [¶] 'IWC has promulgated 15 [industry and occupation wage] orders—12 orders cover specific industries and 3 orders cover occupations—and 1 general minimum wage order which applies to all California employers and employees (excluding public employees and outside salesmen). [Citations.]' [Citation.]" (*Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575, 581 (*Morillion*); see *Skyline Homes, Inc. v. Department of Industrial Relations* (1985) 165 Cal.App.3d 239, 252 (*Skyline*); *Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 561-562 (*Tidewater*).)

Wage Order No. 1, codified as title 8 California Code of Regulations section 11010 (CCR), concerns the manufacturing industry and is therefore applicable in the instant case. It provides as to hourly employees that "employees shall not be employed

9

more than eight (8) hours in any workday or more than 40 in a workweek unless the employee receives one and one half (1 1/2) times such employee's regular rate of pay for all hours worked over 40 hours in the workweek. Eight (8) hours of labor constitutes a day's work. Employment beyond eight (8) hours in any workday or more than six (6) days in any workweek is permissible provided the employee is compensated for such overtime at not less than: [¶] (a) One and one-half (1 1/2) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours up to and including twelve (12) hours in any workday, and for the first eight (8) hours worked on the seventh (7th) consecutive day; of work in a workweek; and [¶] (b) Double the employee's regular rate of pay for all hours worked in excess of 12 hours in any workday and for all hours worked in excess of eight (8) hours on the seventh (7th) consecutive day of work in a workweek."

"The DLSE 'is the state agency empowered to enforce California's labor laws, including IWC wage orders.' [Citations.]" (*Morillion, supra,* 22 Cal.4th at p. 581; see *Skyline, supra,* 165 Cal.App.3d at p. 252; *Tidewater, supra,* 14 Cal.4th at pp. 561-562.) "As a general rule, the courts defer to the agency charged with enforcing a regulation when interpreting a regulation because the agency possesses expertise in the subject area. [Citation.] However, final responsibility for interpreting a statute or regulation rests with the courts and a court will not accept an agency interpretation which is clearly erroneous or unreasonable. [Citations.]" (*Aguilar, supra,* 234 Cal.App.3d at p. 28.)

*C. Analysis*

In determining whether defendant's overtime bonus formula is lawful we begin with the principle that federal law on bonus overtime does not preempt more protective California law. "Federal regulations recognize that various state and local laws will require payment of minimum hourly, daily or weekly wages different from minimums set forth in the Labor Standards Act, and provide that where state or local laws provide greater protection to the employee they shall be taken to override the provisions of the FLSA. (See 29 C.F.R. § 778.5.)" (*Skyline, supra,* 165 Cal.App.3d at p. 251.) As noted in *Skyline*, "The specification of a lower maximum workweek or of a minimum workday is rendered meaningless if the state is deprived of the power to enforce the lower maximum. Because the requirement of the payment of an overtime rate is the sole method by which the maximum hour provisions are made effective, it follows that 29 United States Code, section 218(a), necessarily authorizes the state to require the payment of an overtime rate that recognizes the state's imposition of a maximum workday and/or a lower maximum workday." (*Ibid.*)

Our high court in *Tidewater* explained in the following analytical framework generally applicable to preemption questions that federal law does not preempt state labor law other than in three circumstances: "(1) [W]here the federal law expressly so states, (2) where the federal law is so comprehensive that it leaves '"no room" for supplementary state regulation,' or (3) where the federal and state laws 'actually conflict[].' [Citation.]" (*Tidewater, supra,* 14 Cal.4th at p. 567.)

The court in *Tidewater* decided the issue of whether California IWC wage orders were enforceable against maritime employers under state law. Federal law exempted seamen from federal overtime pay law. The employer filed an action asking for an injunction curtailing DLSE enforcement of IWC wage orders governing overtime pay. (*Tidewater, supra,* 14 Cal.4th at p. 563.) The *Tidewater* court concluded federal law did not preempt California law regulating maritime employment within California. (*Id.* at p. 564.) In reaching this conclusion, the *Tidewater* court noted that, "not only does the FLSA leave 'room' for supplementary state regulation of overtime," the FLSA expressly states that it does *not* presumptively preempt state law regulation of overtime. (*Id.* at p. 567.) The *Tidewater* court explained that "[t]he FLSA includes a 'savings clause,' WHICH PROVIDES: 'No provision of this chapter or of any order thereunder shall excuse noncompliance with any . . . State law or municipal ordinance establishing . . . a maximum workweek lower than the maximum workweek established under this chapter . . . .' (29 U.S.C. § 218(a).) The federal courts that have addressed this question have interpreted this savings clause as expressly permitting states to regulate overtime wages. [Citations.].)" (*Ibid.*) The *Tidewater* court concluded that none of the three situations in which preemption may occur applied. (*Id.* at p. 568.)

Likewise, here, there is no federal law preemption. None of the three situations in which preemption may occur applies here. First, the FLSA does not expressly preclude states from regulating overtime applied to bonuses. Furthermore, as explained in *Tidewater, supra,* 14 Cal.4th 557, the FLSA includes a savings clause which expressly permits states to regulate overtime wages. Second, as indicated by our high court in

12

*Tidewater*, the federal law is not so comprehensive that it leaves no room for supplementary state regulation of overtime. Third, federal and state laws regarding overtime, as applied to bonuses, do not actually conflict; primarily because there is no express state law providing a formula for calculating bonus overtime. Even though federal law does not preempt state law here, this does not preclude applying federal law where there is no state law regulating bonus overtime.

Plaintiff argues there is state law applicable to bonus overtime which is more favorable than federal law. Citing *Skyline, supra,* 165 Cal.App.3d 239, plaintiff argues federal formulas for calculating overtime cannot be used because they disregard the differences in federal and California law and the federal formulas undermine the legislative intent behind California overtime laws. In *Skyline*, the employer filed a declaratory relief action against the DLSE, seeking a ruling that the employer's method for computing overtime pay for its salaried employees was proper. The employees worked a fluctuating workweek, in which their work hours varied. On some days the employees worked more than eight hours and on other days they did not work or only worked a few hours. Some weeks the employees worked more than 40 hours. The employer paid its workers a fixed minimum salary, plus overtime for working over 40 hours a week. The employees argued the employer improperly computed their overtime pay, leading DLSE to institute proceedings against the employer to compel payment. The trial court granted DLSE's motion for summary judgment, and the court in *Skyline* affirmed. (*Id.* at p. 255.)

13

The trial court in *Skyline* rejected the employer's method of calculating overtime by dividing the employee's weekly salary by the total number of hours actually worked in a given week to obtain the regular rate of pay, with hours worked over 40 hours in a week compensated as overtime at one-half the regular rate of pay. This method, based on federal law, resulted in lower pay for overtime because the more hours an employee worked overtime, the lower the regular pay rate used to calculate overtime. (*Skyline, supra,* 165 Cal.App.3d at pp. 245-247.)

The *Skyline* court noted that, "Unless the insertion of the limitation with respect to the eight-hour day is to be rendered meaningless, we must assume that the IWC intended to impose a different standard for determining overtime than that allowed under the FLSA. If, as seems obvious, the IWC intended to employ an eight-hour day standard and to discourage the use of longer work days, the fluctuating workweek would not effectuate this purpose." (*Skyline, supra,* 165 Cal.App.3d at p. 248.) The *Skyline* court concluded California law's eight-hour day limitation was incompatible with the federal law's fluctuating workweek method of calculating the regular pay rate and overtime, which relies solely on the 40-hour workweek, without taking into account an eight-hour day limitation. (*Id.* at pp. 248, 254.) "[I]n California overtime wages are also recognized as imposing a premium or penalty on an employer for using overtime labor, and . . . this penalty applies to excessive hours in the workday as well as in the workweek." (*Id.* at p. 249.) *Skyline* noted that a purpose of the California overtime premium requirement "is to discourage long daily hours which the commission has determined are detrimental to the

14

welfare of employees, and further, that the overtime is to discourage the use of daily schedules in excess of eight hours." (*Id.* at p. 254.)

The *Skyline* court therefore rejected the federal law method of calculating overtime and approved the method based on a California wage order regulation, as construed by the DLSE. (*Skyline, supra,* 165 Cal.App.3d at p. 250.) After the *Skyline* decision, the formula *Skyline* adopted for salaried employees was codified in Labor Code section 515, subdivision (d), which provides: "For the purpose of computing the overtime rate of compensation required to be paid to a nonexempt full-time salaried employee, the employee's regular hourly rate shall be 1/40th of the employee's weekly salary." (Lab. Code, § 515, subd. (d); *Marin, supra,* 169 Cal.App.4th at p. 812.)

Plaintiff's reliance on *Skyline* is misplaced because it was confined to salaried employees working a fluctuating workweek, did not address bonuses, and dealt with an employer who failed to pay overtime for work exceeding eight hours in a day. (See *Marin, supra,* 169 Cal.App.4th at pp. 810-811.) In rejecting an equal protection challenge, the *Skyline* court states: "[*T*]*he method of computing overtime compensation for employees other than salaried employees is not before us.* Plaintiffs' pleadings in the trial court specifically stated that 'The dispute in this case centers on the proper method of overtime computation for employees who receive a fixed salary but work a variable number of hours each week. This case does not concern employees working on a commission, piece rate or other wage basis.' There has been no showing that those employees are similarly situated to salaried employees." (*Skyline, supra,* 165 Cal.App.3d

15

at p. 254 (emphasis added); see *Marin,* at pp. 812-813.)  *Skyline* is not dispositive in the instant case, which concerns computing an hourly employee's bonus overtime.

In *Tidewater*, the court disapproved *Skyline*, but only as to *Skyline*'s holding that DLSE's written interpretive policies in its manual are not regulations within the meaning of the Administrative Procedure Act (APA).[2]  (*Tidewater, supra,* 14 Cal.4th at pp. 561, 572-573; *Skyline, supra,* 165 Cal.App.3d at p. 253.)  The court held in *Tidewater* that DLSE Manual's written policies interpreting IWC wage orders constitute void regulations because they are legislative in nature and were not adopted in accordance with requisite APA rulemaking procedures.  (*Tidewater,* at pp. 561, 573; *Marin, supra,* 169 Cal.App.4th at p. 812.)  Therefore the trial court cannot rely on DLSE Manual policies and interpretations because they do not have the force of law.  (*Tidewater,* at p. 573; see *Marin,* at p. 815.)

The *Tidewater* court explained that in the early 1980's, written DLSE "policy existed only in a draft policy manual the DLSE prepared for the guidance of deputy labor commissioners.  In 1989, however, the DLSE prepared a formal 'Operations and Procedures Manual' incorporating the same policy and made that manual available to the public on request.  The manual reflected 'an effort to organize . . . interpretive and enforcement policies' of the agency and 'achieve some measure of uniformity from one office to the next.'  The DLSE prepared its policy manuals internally, without input from affected employers, employees, or the public generally."  (*Tidewater, supra,* 14 Cal.4th at

---

[2]  Government Code section 11340 et seq.

16

p. 563.) There was thus no compliance with the APA, which is required when creating regulations.

The court in *Tidewater* acknowledged that, "[o]f course, interpretations that arise in the course of case-specific adjudication are not regulations, though they may be persuasive as precedents in similar subsequent cases. [Citations.] Similarly, agencies may provide private parties with advice letters, which are not subject to the rulemaking provisions of the APA. (Gov. Code, §§ 11343, subd. (a)(3), 11346.1, subd (a).) Thus, if an agency prepares a policy manual that is no more than a restatement or summary, without commentary, of the agency's prior decisions in specific cases and its prior advice letters, the agency is not adopting regulations. (Cf. Lab. Code, § 1198.4 [implying that some 'enforcement policy statements or interpretations' are not subject to the notice provisions of the APA].) A policy manual of this kind would of course be no more binding on the agency in subsequent agency proceedings or on the courts when reviewing agency proceedings than are the decisions and advice letters that it summarizes." (*Tidewater, supra,* 14 Cal.4th at p. 571.) The DLSE Manual provisions were regulations but are unenforceable because they were not adopted in accordance with the APA. (*Id.* at p. 573.) Likewise, DLSE opinion letters are not controlling upon the courts as binding legal authority. (*Brinker Restaurant v. Superior Court* (2012) 53 Cal.4th 1004, 1029, fn. 11; *Morillion, supra,* 22 Cal.4th at p. 584.)

The court in *Tidewater* nevertheless held, based on independent analysis other than the DLSE Manual provisions, that the DLSE properly exercised its enforcement jurisdiction and the trial court erred in enjoining DLSE's enforcement of IWC wage

17

orders regarding overtime pay. (*Tidewater, supra,* 14 Cal.4th at p. 577.) The *Tidewater* court reasoned: "The DLSE's policy may be void, but the underlying wage orders are *not* void. Courts must enforce those wage orders just as they would if the DLSE had never adopted its policy." (*Ibid.*) The *Tidewater* court accordingly concluded the wage orders applied as authoritative law and therefore the trial court erred in enjoining overtime applications founded on the wage orders. (*Id.* at p. 579.)

*Tidewater* is instructive here as to its holding that the DLSE Manual provisions are void regulations which are not binding on this court. (*Tidewater, supra,* 14 Cal.4th at p. 576.) Even though DLSE's interpretations are not entitled to the judicial deference due quasi-legislative rules, such interpretations may be entitled to consideration. (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 21 (*Yamaha*).) As explained by our high court in *Yamaha*, "Whether judicial deference to an agency's interpretation is appropriate and, if so, its extent — the 'weight' it should be given — is thus fundamentally *situational.* A court assessing the value of an interpretation must consider a complex of factors material to the substantive legal issue before it, the particular agency offering the interpretation, and the comparative weight the factors ought in reason to command." There are two broad categories of factors relevant to a court's assessment of the weight due an agency's interpretation: "[t]hose 'indicating that the agency has a comparative interpretive advantage over the courts,' and those 'indicating that the interpretation in question is probably correct.' [Citations.]" (*Id.* at p. 12.)

18

The first category includes factors that "'assume the agency has expertise and technical knowledge, especially where the legal text to be interpreted is technical, obscure, complex, open-ended, or entwined with issues of fact, policy, and discretion. A court is more likely to defer to an agency's interpretation of its own regulation than to its interpretation of a statute, since the agency is likely to be intimately familiar with regulations it authored and sensitive to the practical implications of one interpretation over another.' [Citation.]" (*Yamaha, supra,* 19 Cal.4th at p. 12.)

The second group of factors relevant to assessing the weight due an agency's interpretation "includes indications of careful consideration by senior agency officials ('an interpretation of a statute contained in a regulation adopted after public notice and comment is more deserving of deference than [one] contained in an advice letter prepared by a single staff member' [citation], evidence that the agency 'has consistently maintained the interpretation in question, especially if [it] is long-standing' [citation] . . . and indications that the agency's interpretation was contemporaneous with legislative enactment of the statute being interpreted. If an agency has adopted an interpretive rule in accordance with Administrative Procedure Act provisions . . . that circumstance weighs in favor of judicial deference. However, even formal interpretive rules do not command the same weight as quasi-legislative rules. Because '"the ultimate resolution of . . . legal questions rests with the courts"' [citation], judges play a greater role when reviewing the persuasive value of interpretive rules than they do in determining the validity of quasi-legislative rules." (*Yamaha, supra,* 19 Cal.4th at pp. 12-13.)

The extent of our reliance on the DLSE Manual for guidance turns on "'*the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.*'" (*Yamaha, supra,* 19 Cal.4th at pp. 14-15, quoting *Skidmore* [*v. Swift & Co.* (1944) 323 U.S. 134,] 140.) In determining how much weight to give the DLSE Manual as guidance in the instant case, we first consider the DLSE Manual's statement of sources relied upon in forming the DLSE policies and interpretations stated in the DLSE Manual: "This manual summarizes the policies and interpretations which DLSE has followed in discharging its duty to administer and enforce the labor statutes and regulations of the State of California. The summarized policies and interpretations are derived from the following sources:

"1. Decisions of California's courts which construe the state's labor statutes and regulations and otherwise apply relevant California law.

"2. California statutes and regulations which are clear and susceptible to only one reasonable interpretation.

"3. Federal court decisions which define or circumscribe the jurisdictional scope of California's labor laws and regulations or which are instructive in interpreting those California laws which incorporate, are modeled on, or parallel federal labor laws and regulations.

"4. Selected opinion letters issued by DLSE in response to requests from private parties which set forth the policies and interpretations of DLSE with respect to the application of the state's labor statutes and regulations to a specific set of facts.

20

"5. Selected prior decisions rendered by the Labor Commissioner or the Labor Commissioner's hearing officers in the course of adjudicating disputes arising under California's labor statutes and regulations." (DLSE Manual, June 2002, § 1.1.6, pp. 1-2, 1-3.) The DLSE Manual further states that the particular sources underlying the DLSE Manual's specific policies and interpretations, such as opinion letters, administrative decisions, and decisions by the labor commissioner adopted as a precedent decision, are indicated in the DLSE Manual. (DLSE Manual, June 2002, §§ 1.1.6.1, 1.1.6.3, p. 1-3.)

The DLSE Manual contains provisions on how to calculate overtime on bonuses. It distinguishes between flat sum bonuses and percentage of production or other formulaic bonuses. The DLSE Manual sections 49.2.4.2 and 49.2.4.3 of the DLSE Manual address overtime on flat sum bonuses. The DLSE Manual section 49.2.4.2 provides: "If the bonus is a flat sum, such as $300 for continuing to the end of the season, or $5.00 for each day worked, the regular bonus rate is determined by dividing the bonus by the maximum legal regular hours worked during the period to which the bonus applies. This is so because the bonus is not designed to be an incentive for increased production for each hour of work; but, instead is designed to insure that the employee remain in the employ of the employer. To allow this bonus to be calculated by dividing by the total (instead of the straight time hours) would encourage, rather than discourage, the use of overtime. Thus, a premium based on bonus is required for each overtime hour during the period in order to comply with public policy." The DLSE Manual section 49.2.4.3 of the Manual gives an example of how such overtime on a flat sum bonus is calculated.

Because the DLSE Manual does not carry the force of law, this court is not required to mandate compliance with the formula provided in the DLSE Manual section 49.2.4.2. As explained in *Marin, supra,* 169 Cal.App.4th at p. 815, "[l]ike the DLSE interpretation at issue in *Skyline,* Manual section 49.2.4.2 is 'a standard of general application interpreting the law the DLSE enforce[s],' and 'not merely a restatement of prior agency decisions or advice letters.' [Citation.] Our conclusion is supported by section 1.1.6.1 of the Manual, which states that if the source of the interpretation is a statute, regulation, court decision, opinion letter, or 'Administrative Decision' or 'Precedent Decision' of the Labor Commissioner, that source will be identified in the Manual. No such sources are mentioned in section 49.2.4.2. The only source cited for the flat sum bonus rule is 'public policy.' Accordingly, section 49.2.4.2 does not have the force of law." (*Ibid.*, fn. omitted.) It not only has no precedential value, it carries very little, if any, persuasive value because the DLSE Manual section 49.2.4.2 does not cite any supporting legal authority. This lack of any citation to supporting binding California law is because there is none. There is no state law specifying a formula for overtime applied to bonuses, particularly flat sum bonuses.

Nevertheless, the court in *Marin* indicated that the DLSE Manual section 49.2.4.2 provides a reasonable formula for calculating overtime on a flat sum bonus. "The flat sum bonus formula set forth in sections 49.2.4.2 and 49.2.4.3 of the Manual, which uses a divisor of straight time, instead of total hours worked to set the regular bonus rate, and a multiplier of 1.5, rather than 0.5, to fix the bonus overtime due, produces 'a premium

22

based on bonus' that the DLSE believes is necessary to avoid encouraging the use of overtime." (*Marin, supra,* 169 Cal.App.4th at pp. 817-818.)

The *Marin* court noted that, "[i]n the case of a true flat sum bonus where the employee cannot earn any additional bonus by working overtime hours, excluding such hours from the divisor prevents them from diluting the regular rate.  Including those hours would give the employer an incentive to impose overtime because the additional overtime would reduce the cost of overtime by decreasing the regular rate—part of the situation addressed in the *Skyline* case." (*Marin, supra,* 169 Cal.App.4th at p. 819.)  Although, as indicated by *Marin*, the DLSE Manual section 49.2.4.2 provides a reasonable formula for calculating overtime on a flat sum bonus, the formula has not been enacted as enforceable law and therefore this court cannot enforce it.  Furthermore, enacting the formula in the DLSE Manual section 49.2.4.2 as enforceable law falls within the domain of the Legislature and IWC, not this court.

In *Marin*, the court concluded the DLSE Manual flat sum bonus formula did not apply because the bonus in *Marin* was a hybrid bonus which functioned primarily as a production bonus and did not encourage the use of overtime.  (*Marin, supra,* 169 Cal.App.4th at p. 818.)  Relying on *Skyline* and the DLSE Manual policies, the trial court in *Marin* held the employer's overtime formula violated California law, noting that "'[t]he law is sparse regarding how an employer is to calculate overtime when awarding bonuses,' and finding that, 'given the paucity of California authority in this area and contrary Federal authority, there are substantial grounds for differences of opinion.'" (*Marin,* at p. 810.)  On appeal, the *Marin* court reversed the trial court, concluding the

23

employer's formula did not violate either California or federal law and was lawful. (*Id.* at p. 806.)

Marin is not dispositive here. *Marin* concerns a deferred, semi-annual, formulaic bonus which is primarily a production bonus and was not paid in the same pay period earned. The *Marin* bonus was based on the number of years worked for the company and number of paid hours accrued during a six-month period. In addition, the bonus was paid at the end of a six-month period, with overtime pay added to the bonus. Furthermore, in *Marin*, unlike in the instant case, there was no directly applicable federal regulation or statute. Here, plaintiff's bonus is a flat sum bonus paid in the same period earned. Unlike in *Marin*, federal regulation, CFR section 788.209(a), applies and provides a formula used by defendant for computing overtime on plaintiff's bonus.

Defendant argues that since there is no state law that provides a formula for computing overtime on bonuses, defendant lawfully applied the federal formula. In urging this court to find defendant's use of the federal formula lawful, defendant explains it had no alternative but to follow the only existing explicit method founded on enforceable law. By not regulating overtime pay on bonuses, the state has in effect left to federal regulation computing overtime on bonuses. Congress has specifically permitted states to enforce overtime laws more generous than the FLSA under the savings clause (*Tidewater, supra,* 14 Cal.4th at p. 567; *Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, 795 (*Ramirez*)), yet this state has not enacted any legislation or regulations specifying a formula for computing overtime paid on bonuses. This court therefore cannot mandate and enforce compliance with plaintiff's proposed formula for computing

24

overtime on bonuses, when there is no applicable statute or regulation providing for such a formula. Even though the federal formula for computing bonus overtime may not comport with state policy discouraging overtime, defendant's use of the federal formula is lawful because it is based on federal law, and there is no state law or regulation providing an alternative formula.

In the absence of a formula for computing bonus overtime founded on binding state law, there is no law or regulation the trial court or this court can construe or enforce as a method for computing overtime plaintiff's bonuses, other than the applicable federal regulation, CFR section 778.209(a). This is not a situation in which state and federal labor laws substantially differ and therefore reliance on federal law is misplaced. (*Skyline, supra,* 165 Cal.App.3d at pp. 247-249; *Ramirez, supra,* 20 Cal.4th at p. 798.) Defendant therefore lawfully used the federal formula for computing overtime on plaintiff's flat sum bonuses. In turn, the trial court properly granted defendant's motion for summary judgment.[3]

---

[3] During oral argument plaintiff untimely raised new legal theories not previously briefed by plaintiff and authority not included in plaintiff's appellate briefs. Plaintiff argued for the first time the flat sum bonus was not actually a bonus but rather salary, and the flat sum bonus was artificially labeled a bonus, constituting a subterfuge that operates to evade overtime pay laws by reducing the regular hourly rate when overtime hours are worked on the weekend. The legal authority, raised for the first time during oral argument, included *Huntington Memorial Hospital v. Superior Court* (2005) 131 Cal.App.4th 893; *Walling v. Youngerman-Reynolds Hardwood Co.* (1945) 325 U.S. 419, 424-425; 29 CFR § 778.203 (premium pay for work on Saturdays, Sundays, and other "special days"); 29 CFR § 778.327(b) (temporary or sporadic reduction in schedule); and 29 CFR § 778.502 (artificially labeling part of the regular wages a "bonus").

We do not address in this decision such untimely, waived theories and legal authority on the grounds plaintiff did not include them in its appellate opening brief or

*[footnote continued on next page]*

V

DISPOSITION

The judgment is affirmed.  Defendant is awarded its costs on appeal.

CERTIFIED FOR PUBLICATION

CODRINGTON
J.

We concur:

HOLLENHORST
Acting P. J.

KING
J.

---

reply; plaintiff did not provide defendant or this court with notice before oral argument of plaintiff's intent to rely on new legal authority and raise new theories; and defendant therefore did not have an opportunity to review and provide a fully informed response to such new theories and legal authorities.

Furthermore, without suggesting whether plaintiff's new theories and legal authority have merit, we decline to consider them because plaintiff has not demonstrated good cause for raising them for the first time during appellate oral argument.  (See *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 894, fn. 10 [points raised in appellate reply brief for the first time will not be considered, unless good reason is shown for failure to present them before]; *Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 977, fn. 12; *Estate of McDaniel* (2008) 161 Cal.App.4th 458, 463, quoting *People v. Harris* (1992) 10 Cal.App.4th 672, 686 ["'contentions raised for the first time at oral argument are disfavored *and* may be rejected solely on the ground of their untimeliness.'"].